THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
**Jose Alberto Claros, et al.,**            )
                                            )
      **Plaintiffs,**           )
                                            )
**v.**                                      )   Case: 1:09-cv-01888
                                            )   Assigned to: Judge Walton
                                            )   Assign Date: 10/2/2009
**Nastos Construction, Inc., et al.,**      )   Description: Labor-FLSA
                                            )
                                            )
      **Defendants.**           )
_____)

**MEMORANDUM IN SUPPORT OF MOTION
FOR CONDITIONAL CLASS CERTIFICATION, ISSUANCE OF NOTICE
AND AN ORDER FOR CERTAIN DISCOVERY**

This is a lawsuit for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* ("FLSA").[1] It is brought by Plaintiffs on behalf of themselves and other similarly-situated current and former employees of Nastos Construction, Inc. ("Nastos"). For the reasons described below and pursuant to 29 U.S.C. § 216(b), this Court should: (a) conditionally certify that the FLSA claims can be maintained as a collective action;[2] (b) order Defendants to produce the names and last known addresses of all members of the class who have worked for Nastos at any time since October 2, 2006; (c) approve Plaintiffs' proposed Notice plan, consisting of a bilingual notice (Exs. A & B) and the publication plan (Ex. C); and (d) order Defendants to pay the costs of class notice.

---

[1] Plaintiffs also allege violations of the D.C. Payment and Collection of Wages Law, D.C. Code Ann. § 32-1301, *et seq.*, and District of Columbia common law, but these claims are not germane to the present motion.

[2] Plaintiffs reserve the right to designate sub-classes at a later stage should it be necessary for the efficient management and resolution of the case.

-4-

# FACTUAL BACKGROUND

## I. The Parties

Nastos is a District of Columbia Corporation that provides construction services to commercial, residential, governmental and institutional properties in the District of Columbia, Maryland, West Virginia and Virginia.  *See* Compl. at ¶¶ 10, 24 (Dkt. No. 1).  The Company operates out of a single location in Washington, D.C.  *See* Nastos Construction, http://www.nastos.com/Contact_Us.htm (last visited June 16, 2010).  Defendants Manuel Santos, Ray Amirian, and Amporn Galloway are shareholders and officers of Nastos, serving as President, Vice-President and Chief Financial Officer, respectively.  *See* Compl. at ¶¶ 12-14.  Defendant Jose Rivera is a manager and supervisor at Nastos who, along with the other individual Defendants, exercised a substantial amount of control over the Company's day-to-day operations at all relevant times.  *See id.* at ¶ 15.

The three putative Class Representatives in this case – Plaintiffs Jose Alberto Claros, Nelson Martinez, and Oscar Rodriguez – each worked for Nastos at various times during the class period.  *See id.* at ¶¶ 3-5, 21.  These Plaintiffs, like all members of the putative FLSA class in this case, were employees of Nastos who were paid by the hour, by salary, or both, and who routinely worked in excess of forty (40) hours in a given workweek.  *See id.* at ¶¶ 3-5, 29.

## II. Proceedings to Date

The seven named Plaintiffs in this case filed their Complaint for unpaid overtime against the Defendants on October 2, 2009.  Since the Complaint was filed, an additional 29 class

members have filed FLSA opt-in consent forms indicating their wish to proceed as party plaintiffs in this case to recover unpaid overtime.[3]

On November 2, 2009, Defendants Nastos, Santos, Amirian and Galloway answered and simultaneously filed a Motion to Dismiss certain counts of the Complaint.[4] On November 17, 2009, Defendant Rivera answered and simultaneously filed a Motion to Dismiss.[5] Both motions have been fully briefed and are now ripe for decision.

On December 4, 2009, the Parties had their initial meet and confer conference, as required under Local Rule 16.3. On March 9, 2010, in order to explore the possibility of settlement, the Parties filed a Joint Motion for Stay of Proceedings. The Court lifted the stay on September 21, 2010.
.

### III.  Background Regarding Claims of the Plaintiff Class

During the class period, Plaintiffs and other members of the proposed class were assigned by Nastos management, including Defendants Santos and Rivera, to work at various Nastos project sites in or around the Washington, D.C. metropolitan area. *See* Ex. J (Rodriguez Decl.) at ¶¶ 5-6, 8; Ex. H (Medina Molina Decl.) at ¶¶ 6-7. Class members performed various construction work tasks at Nastos project sites, including bricklaying, concrete finishing, operating machinery, and carpentry. *See, e.g.,* Ex. D (Canizalez Decl.) at ¶ 6; Ex. E (Claros

---

[3] The Notices of Filing of Consent Forms to be Claimants Under the FLSA were filed on December 16, 2009, December 31, 2009, January 25, 2010, and June 14, 2010. (Dkt. Nos. 22, 23, 24, and 27.)

[4] Defendants sought to dismiss counts II, III, V and VI of the Complaint, and also sought a more definitive statement of count II of the Complaint. (Dkt. No. 8.)

[5] Defendant Rivera's memorandum adopted by reference Defendants Nastos, Santos, Amirian and Galloway's memorandum in support of their Motion to Dismiss. (Dkt. No. 14.)

Decl.) at ¶ 6; Ex. I (Santiago Molina Decl.) at ¶ 6.[6]  Generally, work shifts at project sites (excluding shop and travel time) ran for eight hours a day from Monday through Friday.  *See* Ex. E (Claros Decl.) at ¶¶ 8, 9; Ex. D (Canizalez Decl.) at ¶¶ 8; 10; Ex. J (Rodriguez Decl.) at ¶¶ 9, 11.  However, at the direction of Nastos management, hours often exceeded eight hours per day during particular periods or on particular jobs.  *See* Ex. I (Santiago Molina Decl.) at ¶¶ 7-8, 11. Additionally, salaried employees were required to work two Saturdays a month and hourly paid employees also occasionally worked on Saturdays.  *See* Ex. E (Claros Decl.) at ¶ 8; Ex. J (Rodriguez Decl.) at ¶ 9; Ex. G (Mejia Decl.) at ¶ 8; Ex. D (Canizalez Decl.) at ¶ 9; Ex. I (Santiago Molina Decl.) at ¶ 8.

In addition to working eight-hour shifts at project sites five or six days a week, Plaintiffs and proposed class members were routinely required to report to the Nastos shop before their shifts to perform tasks that were integral and indispensable to their principal employment activities.  *See* Ex. J (Rodriguez Decl.) at ¶ 14; Ex. E (Claros Decl.) at ¶ 11; Ex. I (Santiago Molina Decl.) at ¶¶ 14-16; Ex. F (Martinez Decl.) at ¶ 14; Ex. D (Canizalez Decl.) at ¶ 12.  These tasks included waiting for and receiving assignments and project-related instructions from Nastos management, including Defendant Rivera; gathering the necessary tools, equipment and materials needed for projects sites, either at the Nastos shop or at local hardware stores; loading tools, equipment and materials onto Nastos vehicles; and driving other employees to the project site.  *See* Ex. F (Martinez Decl.) at ¶ 14; Ex. J (Rodriguez Decl.) at ¶ 14, Ex. I (Santiago Molina Decl.) at ¶¶ 14-17; Ex. K (Vaires Decl.) at ¶¶ 10-11, 13; Ex. E (Claros Decl.) at ¶ 11.  Likewise,

---

[6] Some Nastos employees were also assigned to work as foremen on particular projects.  As foremen they assumed only a few additional responsibilities, such as completing timesheets for other employees assigned to a project site, and usually held the position on a temporary basis.  *See* Ex. D (Canizalez Decl.) at ¶¶ 6-7; Ex. E (Claros Decl.) at ¶¶ 6-7; Ex. F (Martinez Decl.) at ¶¶ 7-8.

at the end of each work shift, Plaintiffs and proposed class members were required to return to the Nastos shop to unload tools, equipment, materials and trash from company vehicles.  *See* Ex. J (Rodriguez Decl.) at ¶ 15; Ex. H (Medina Molina Decl.) at ¶ 15; Ex. E (Claros Decl.) at ¶ 12; Ex. F (Martinez Decl.) at ¶ 15.

Defendants systematically refused to pay the named Plaintiffs, the opt-in Plaintiffs, and members of the proposed class "time and one-half" for every hour worked in excess of forty (40) hours in a given workweek during the class period.  *See, e.g.,* Ex. J (Rodriguez Decl.) at ¶¶ 9-10, 12-13; 16-18; Ex. L (Vazquez Consent Form).  This refusal to pay overtime was a common scheme that took the following forms: refusal to pay any overtime wages to salaried, non-exempt employees for hours worked in excess of forty (40) hours per week; refusal to pay overtime wages to hourly-paid, non-exempt employees for all hours worked in excess of forty (40) hours per week; failure to pay overtime wages for work performed by employees while at Nastos' shop before and after their work shifts; and failure to pay overtime for time spent traveling to and from project sites.  *See* Compl. at ¶¶ 32, 55; Ex. E (Claros Decl.) at ¶¶ 8, 10, 13; Ex. F (Martinez Decl.) at ¶¶ 9-13, 16-18; Ex. H (Medina Molina Decl.) at ¶¶ 9, 12-13, 16; Ex. I (Santiago Molina Decl.) at ¶¶ 9, 12-13, 18.  These unlawful practices were carried out by, at the direction of, or with the express knowledge of, all of the Defendants.  *See* Compl. at ¶ 34; Ex. J (Rodriguez Decl.) at ¶¶ 11-12; Ex. F (Martinez Decl.) at ¶¶ 10-12.  Further, because these wage violations were pursuant to Nastos' general policy and practice, they affected a sizeable number of Nastos' employees.  *See* Ex. F (Martinez Decl.) at ¶¶ 10-11, 17-18; Ex. J (Rodriguez Decl.) at ¶ 12.

Defendants knew at all relevant times that they owed overtime wages to their employees.

- First, Nastos management, including Defendants Santos and Rivera, supervised and controlled the work and work schedules of the Company's employees, including when they were required to report to Nastos' office in the morning, as well as when they had to remain at a project site after normal working hours.  *See*

      Ex. J (Rodriguez Decl.) at ¶¶ 11, 14;  Ex. D (Canizalez Decl.) at ¶¶ 10, 12.

- Second, Nastos management regularly instructed Nastos' employees to work more than eight hours a day, and also instructed them to work on Saturdays after they already had worked forty hours in a pay period.  *See* Ex. E (Claros Decl.) at ¶ 8-9; Ex. H (Medina Molina Decl.) at ¶ 8; Ex. J (Rodriguez Decl.) at ¶¶ 8, 10.

- Third, foremen recorded all of the hours worked by employees at each project site on a daily basis and submitted timesheets to the Nastos office each week.  *See* Ex. D (Canizalez Decl.) at ¶ 7; Ex. F (Martinez Decl.) at ¶ 8.

- Fourth, Plaintiffs and other employees had complained to Defendants Santos and Rivera about their unpaid overtime.  *See* Ex. F (Martinez Decl.) at ¶¶ 11, 12; Ex. J (Rodriguez Decl.) at ¶ 12.  On one occasion, Defendant Santos placated the employees by replying that he would "take care of it," but he never followed through with this promise.  *See* Ex. J (Rodriguez Decl.) at ¶ 12.  On another occasion, Defendant Santos said that the Company's policy was to compensate them for all hours worked at the regular wage, and that employees could go find work elsewhere if this was not acceptable to them.  *See* Ex. F (Martinez Decl.) at ¶ 11.

## ARGUMENT

### I. The Court Should Provisionally Certify this Case as a Collective Action Under the Fair Labor Standards Act and Direct the Issuance Forthwith of Class Notice.

    A.    The Legal Standards Governing Collective Actions

Recognizing that individual wage and hour claims "might be too small in dollar terms to support a litigation effort," *McNeil v. District of Columbia*, No. 98-3142, 1999 U.S. Dist. LEXIS 23388, at *5-6 (D.D.C. Aug. 5, 1999), the Fair Labor Standards Act (FLSA) permits a plaintiff to pursue a collective action by suing on his own behalf and on behalf of "other employees similarly situated."  29 U.S.C. § 216(b).  The "similarly situated" requirement helps ensure "the efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity."  *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170; 110 S. Ct. 482, 486 (1989).

In FLSA cases, courts conditionally certify the collective action class early in the litigation and may revisit certification later as the case develops.  *See Hunter v. Sprint Corp.*, 346

F. Supp. 2d 113, 117 (D.D.C. 2004); *Robinson-Smith v. GEICO*, No. 01-1340, 2001 U.S. Dist. LEXIS 25516, at *5-6 (D.D.C. Nov. 16, 2001). This early certification is important in FLSA collective actions because class members must affirmatively opt in, and the statute of limitations continues to run on absent class members' claims until they join the action. *See* 29 U.S.C. §§ 216(b), 256. For this reason, early notice to the class members is essential. *See Hoffman-La Roche, Inc.*, 493 U.S. at 170; 110 S. Ct. at 486 (explaining that the benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate").

The requirements for certification of a collective action are separate and distinct from the requirements of a class action under Fed. R. Civ. P. 23. *See Hunter*, 346 F. Supp. 2d at 117 ("This unique cause of action, known as a 'collective action,' is not subject to the numerosity, commonality, and typicality rules of a class action under Rule 23."); *Chase v. AIMCO Properties, L.P.*, 374 F. Supp. 2d 196, 199-200 (D.D.C. 2005) ("The opt-in requirement of an FLSA collective action and Congress' policy choice to encourage small wage and hour claims to be brought collectively. . . make FLSA collective actions qualitatively different from Rule 23 class actions."); *Hoffman v. Sbarro*, 982 F. Supp. 249, 263 (S.D.N.Y.) ("§ 216(b) collective actions are not subject to Rule 23's strict requirements, particularly at the notice stage"). Accordingly, at this stage, only a "modest factual showing [is required] to demonstrate that [Plaintiffs and putative class members] were victims of a common policy or plan that violated the law." *Hunter*, 346 F. Supp. 2d at 117; *Robinson-Smith*, 2001 U.S. Dist. LEXIS 25516, at *5-6. This showing may be made on the basis of pleadings and affidavits. *McKinney v. United Stor-all Ctrs., Inc.*, 585 F. Supp. 2d 6, 8 (D.D.C. 2008); s*ee also Cryer v. Intersolutions, Inc.*, 2007 U.S. Dist. LEXIS 29339, at *5 (D.D.C. Apr. 7, 2007) (the court's conditional certification

determination is "based solely on the pleadings and affidavits"); *Castillo v. P & R Enters.*, 517 F. Supp. 2d 440, 445 n.2 (D.D.C. 2007) (approving of judicial reliance on both pleadings and affidavits).

"[T]he D.C. Circuit has not addressed the specific factors that are relevant to whether putative class members are 'similarly situated' to the named plaintiffs in a collective action." *Hunter*, 346 F. Supp. 2d at 117. Consequently, district courts in this Circuit have used an "*ad hoc*" approach "involv[ing] examination of the distinct legal and factual similarities and differences between and among class members' legal claims, though not in reference to the requirements listed under Rule 23." *Chase*, 374 F. Supp. 2d at 199-200 (citing *Hunter*, 346 F. Supp. 2d at 119, and *Hyman v. First Union Corp.*, 982 F. Supp. 1, 3-5 (D.D.C. 1997)). For example, in *Hyman*, Judge Lamberth considered three sets of factors:

> The first set of factors involves an examination of the alleged activities of defendant. If there is evidence that the alleged [misconduct] was part of a[n] institution wide practice, such evidence would support the use of a collective action…. The second group of factors evaluates the similarities of members of the proposed collective action. Weighing very strongly in favor of a collective action is the fact that the challenged employment practice…is the same for each of the members…. The third group of factors involves the extent to which members of the proposed action will rely on common evidence to prove the alleged [misconduct].

982 F. Supp. at 3-5; *see also Robinson-Smith*, 2001 U.S. Dist. LEXIS 25516, at *6 n.4 (adopting the *Hyman* test in an FLSA action). In *Hunter*, Judge Bates employed an alternative three-part test assessing whether all class members worked in the same department, division, and location; whether they advanced similar claims; and whether they sought substantially the same form of relief. 346 F. Supp. 2d at 119.

Importantly, differences in the amount of overtime pay due to each class member do not defeat certification of the class. *See Robinson-Smith*, 2001 U.S. Dist. LEXIS 25516, at *7

(stating that possible variations in individual damage claims do not defeat class certification and noting that individual loss calculations can "readily be determined later on an individual basis.").

      B.    <u>Conditional Certification Under FLSA § 216 Is Appropriate</u>

Plaintiffs' proposed class should be conditionally certified because Plaintiffs' claims for unpaid overtime are based on work policies and practices at Nastos to which all of the named Plaintiffs, opt-in Plaintiffs and proposed class members were subject. Thus, Plaintiffs and class members are "similarly situated" under § 216(b), as applied in both *Hyman* and *Hunter*.

Plaintiffs satisfy the first *Hyman* factor because Defendants' failure to compensate them fully for every hour of overtime was based on systematic, company-wide practices. As explained above, Defendants' failure to pay Plaintiffs and proposed class members overtime was due to specific company policies and practices, including: (1) a policy of paying salaried employees for forty (40) hours of work per week when these employees worked in excess (and occasionally significantly in excess) of forty hours per week, *see, e.g.*, Ex. E (Claros Decl.) at ¶ 8; Ex. G (Mejia Decl.) at ¶ 8; Ex. J (Rodriguez Decl.) at ¶ 9; (2) a practice of failing to compensate hourly-paid employees for every hour of overtime worked at the rate of time and one half their regular wage, *see, e.g.*, Ex. F (Martinez Decl.) at ¶¶ 9-12; Ex. I (Santiago Molina Decl.) at ¶ 9; Ex. K (Vaires Decl.) at ¶ 8; and (3) a policy of not compensating employees for any shop or travel time, *see, e.g.*, Ex. D (Canizalez Decl.) at 15; Ex. F (Martinez.) at ¶¶ 16-18; Ex. G (Medina Molina Decl.) at ¶ 16. As the supporting declarations filed in support of this motion demonstrate, these policies were not applied on a selective employee-by-employee basis, nor were they uniquely applied to the seven Plaintiffs or 29 opt-in Plaintiffs, or any other particular group of the proposed class. Instead, they were company-wide policies created and applied by

the Defendants for all their employees who worked at project sites. Thus, they are precisely the type of "institution-wide" practices that befit a collective action.

The second *Hyman* factor, which examines the similarities among and between class members and focuses on whether the challenged employment practice was applied to the class in a similar manner, *see* 982 F. Supp. at 4, is also clearly satisfied here. In fact, the similarities among and between the Plaintiffs and proposed class members in this case could hardly be closer. All worked as non-exempt construction workers who shared substantially similar job duties and responsibilities. They worked out of the same office, shared the same supervisors, worked in the same discrete geographical area, worked on many of the same projects, and had substantially similar work schedules and routines. *See id.* at 4-5 (fact that proposed class members worked at various client sites in the "discrete geographical area limited to the two neighboring states of Maryland and Virginia and the D.C. area" supports a finding that the class members are similarly situated). Additionally, not only did they all routinely work more than forty (40) hours per week, they did so for the same reasons; namely, because they had to perform work at the Nastos office before and after their work shifts, and were instructed by Defendants to work beyond their normal eight-hour, five-day a week work shifts. *See* Ex. D (Canizalez Decl.) at ¶¶ 10, 12-13. Finally, Plaintiffs and proposed class members suffered the same harm by working in excess of forty (40) hours per week during the class period without being fully compensated for their overtime hours. *See* Compl. at ¶¶ 21, 32; Ex. D (Canizalez Decl.) at ¶¶ 8-9, 11, 15; Ex. E (Claros Decl.) at ¶¶ 8-10, 13; Ex. F (Martinez Decl.) at ¶¶ 9-13, 16; Ex. G (Mejia Decl.) at ¶¶ 8, 14; 16; Ex. H (Medina Molina Decl.) at ¶¶ 9, 12-13, 16; Ex. I (Santiago Molina Decl.) at ¶¶ 9, 12-13, 18; Ex. J (Rodriquez Decl.) at ¶¶ 9-10, 12-13, 16-18; Ex. K (Vaires Decl.) at ¶¶ 8-9, 14.

As for the third *Hyman* factor, common evidence will be used in this case to demonstrate the unlawful conduct at issue.  Plaintiffs and proposed class members will all rely on Nastos pay stubs and payroll records to show that their overtime pay did not correspond with the number of overtime hours worked.  Additionally, because Defendants are believed to have destroyed the original timesheets that were prepared by the foreman for each project, Plaintiffs and proposed class members will all rely on testimony and statistical evidence to support their claims.  Moreover, many of the Plaintiffs and proposed class members will have worked on the same projects, so their testimony will cover common facts such as the frequency with which employees working on particular projects were required to work beyond the regular eight-hour work shift.  The eight sworn declarations filed in support of this Motion reflect the common and overlapping testimony that will be established by the Plaintiffs and proposed class members at trial.  *See e.g.*, Ex. E (Claros Decl.) at ¶¶ 8-13; Ex. J (Rodriguez Decl.) at ¶¶ 9-18; Ex. D (Canizalez Decl.) at ¶¶ 8-15; Ex. K (Vaires Decl.) at ¶¶ 8-14; Ex. L (Vazquez Consent Form).  For these reasons, Plaintiffs clearly satisfy the third and final element of the *Hyman* test.

Plaintiffs also satisfy the "similarly situated" test as articulated in *Hunter*.  First, as stated above, all Plaintiffs and proposed class members worked out of Nastos' only office building located in Washington, D.C., and worked at project sites in the Washington, D.C. metropolitan area performing construction work assignments at the direction of the Defendants.  Thus, they all worked in the same department, division and location.

The "similar claims" factor of *Hunter* is satisfied because Plaintiffs and the proposed class members are all asserting that Defendants denied them overtime pay to which they are entitled as non-exempt employees under the FLSA.  Plaintiffs and proposed class members who were paid by the hour were subject to Nastos' systematic practice of making inadequate overtime

payments to hourly-paid employees. Likewise, all class members who were paid by salary were subject to Nastos' policy of not compensating salaried employees for hours worked in excess of forty (40) hours per week. Additionally, as noted above, Plaintiffs and proposed class members had to perform "shop time" tasks at the Nastos office before and after working at project sites that were integral and indispensable to their principal employment activities. These policies and practices to which all class members were subject form the basis for their claims of unpaid overtime.

Finally, Plaintiffs and potential class members satisfy the third *Hunter* factor because they are seeking the same form of relief. All class members seek their unpaid overtime compensation, liquidated damages, costs and reasonable attorneys' fees incurred in the maintenance of this action. *See* 29 U.S.C. § 207(a), 216(b); Compl. at ¶ 61. Thus, Plaintiffs satisfy all elements of the *Hunter* test and are entitled to conditional class certification at this time.

      C.     Issuance of Notice is Appropriate at this Time

Notice at this time to potential, yet unidentified, class members is appropriate and essential. Under the FLSA, a collective action does not commence as to opt-in plaintiffs until such plaintiffs file written consent with the court. *See* U.S.C. §§ 216(b), 256. Thus, in FLSA collective actions, the statute of limitations continues to run on the unnamed class members' claims until they join the action by affirmatively opting in.

Courts "have endorsed expedited notice as a means of facilitating the FLSA's broad remedial purpose of promoting efficient case management." *Hoffman*, 982 F. Supp. at 262. The need for notice is particularly compelling in cases, such as this one, where it is "evident that a group of 'similarly situated' potential plaintiffs exist." *See id.* at 264. As of the date of this

motion, 29 similarly situated individuals who were employed by Defendants during the class period have each signed an "FLSA Consent Form" wherein each affirms their entitlement to "additional wages of unpaid or underpaid hours [ ] worked for Nastos Construction, Inc. in excess of forty hours per week." *See*, *e.g.*, Ex. L (Vazquez Consent Form).  In light of the evidence Plaintiffs have already obtained to show a pattern of conduct and similarity among class members, notice is appropriate at this stage of the proceedings.  *See Hunter*, 346 F. Supp. 2d at 117; *Robinson-Smith*, 2001 U.S. Dist. LEXIS 25516, at *2.

Because of the nature of Defendants' misconduct, timely notification to FLSA class members is essential here.  In *Hoffman-La Roche,* the Supreme Court recognized that a class member's ability to make an informed decision about whether to participate in a collective action depends on the member receiving accurate and timely notice of the action.  *See* 493 U.S. at 170; 110 S. Ct at 486.  Since *Hoffman-La Roche*, courts have uniformly authorized plaintiffs to send notice to similarly situated class members.  *See*, *e.g., Hunter*, 346 F. Supp. 2d at 121; *Robinson-Smith*, 2001 U.S. Dist. LEXIS 25516, at *8-9; *McNeil*, 1999 U.S. Dist. LEXIS 23388, at *4-7.  Furthermore, as this District Court has recognized, the Supreme Court has also authorized district courts to order defendants' production of names and addresses of putative class members in a collective action.  *See Hoffman*, 493 U.S. at 170; 110 S. Ct at 486; *see also Hunter*, 346 F. Supp. 2d at 121; *Robinson-Smith*, 2001 U.S. Dist. LEXIS 25516, at *3, 9; *McNeil*, 1999 U.S. Dist. LEXIS 23388, at *5-10.

For years, Defendants have violated their wage payment obligations and have misinformed their employees about wages and overtime compensation to which they were entitled.  In addition, Plaintiffs who complained about not receiving overtime pay were told they should find work elsewhere if they were not satisfied with the Company's policy.  This reaction

likely discouraged other employees from coming forward for fear that they could lose their jobs. As a result, Defendants' actions to date have caused many proposed class members to forego pursuing their own claims for unpaid overtime and many have already lost the opportunity to recover unpaid overtime for the period prior to October 2, 2006. Requiring Defendants to produce the names and last known addresses of employees who worked for the Company during the class period is necessary to ensure that all of the Company's employees receive Plaintiffs' proposed notice and are given an opportunity to join this case and recover unpaid overtime for the class period.[7]

Finally, Plaintiffs also should be permitted to issue notice by publication. Several of the current named Plaintiffs and opt-in Plaintiffs have changed their residences since working at Nastos, and it is highly unlikely that all other employees of Nastos have lived in their same residences over the last three years. Thus, because there is a substantial risk that the address information provided by Defendants will be outdated for some members of the proposed class, Plaintiffs should be permitted to publish their notice to organizations and through media outlets to increase the likelihood that all former employees will be informed of their rights. A proposed organization and media plan is included as part of the Notice plan. *See* Ex. C.

## II. Conclusion

For the reasons set forth above, Plaintiffs are entitled to conditional certification of an FLSA collective action of "all persons who are or have been employed by Nastos as non-exempt employees, including hourly-paid employees, salaried employees, and foremen between October 2, 2006 and the present;" approval of Plaintiffs' proposed Notice, *see* Ex. A; and an Order

---

[7] Plaintiffs' proposed notice is in English and Spanish because a significant number of Nastos' employees only speak Spanish and a bilingual notice is necessary to ensure they have a complete and accurate understanding of its terms and significance.

requiring Nastos to produce to Plaintiffs' counsel the names and most current addresses of all current and former employees who fall within the definition of the above class, dating back three years from October 2, 2009.

Dated:   September 27, 2010                    Respectfully Submitted,


        /s/   David F. Williams_____
David F. Williams (D.C. Bar #298380)
david.williams@cwt.com
Geoffrey E. Gettinger (D.C. Bar #477533)
geoffrey.gettinger@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, N.W.
Washington, D.C. 20001
Tel: (202) 862-2200
Fax: (202) 862-2400


      /s/ Laura E. Varela_____
Laura E. Varela (D.C. Bar #974207)
Laura_Varela@washlaw.org
Susan E. Huhta (D.C. Bar #453478)
Susan_Huhta@washlaw.org
Washington Lawyers' Committee for Civil Rights
   and Urban Affairs
11 Dupont Circle, N.W. Suite 400
Washington, D.C. 20036
Tel: (202) 319-1000
Fax: (202) 319-1010

John A. Freedman (D.C. Bar #453075)
john.freedman@aporter.com
Andrew T. Karron (D.C. Bar #393336)
andrew.karron@aporter.com
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC  20004
Phone: (202) 942-5000
Fax:    (202) 942-5999

*Attorneys for Plaintiffs*