## SETTLEMENT AGREEMENT

Lead Plaintiffs Jose Alberto Claros, Nelson Martinez, Oscar Rodriguez, and Jose Arturo Ruiz, on behalf of themselves and a putative class of individuals who were employed to provide labor on a non-exempt basis by Nastos Construction, Inc. between October 2, 2006 and the date of preliminary approval (the "Settlement Class"), and Lead Plaintiffs Milton David Alfaro, Jose Francisco Canizalez, Luis Martin Vaires, Walter Gomez, Jorge Valezquez, Nelson Diaz Alas, Mauricio Diaz Alas, and Jesus Medina Mejia, on behalf of themselves, hereby enter into the following stipulation of settlement (the "Settlement Agreement") with Defendants Nastos Construction, Inc. ("Nastos"), Manuel Santos, Ray Amirian, Amporn Galloway, and Jose "Francisco" Rivera, this 3rd day of January, 2013, to be submitted to the Court for approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

### RECITALS:

A.    On October 2, 2009, plaintiffs commenced a class action/collective action lawsuit entitled *Jose Alberto Claros et al. v. Nastos Construction, Inc. et al.*, Case No. 1:09-cv-01888, in the United States District Court for the District of Columbia ("the Action").

B.    The Collective Action, Class Action and Individual Complaints allege, among other things, that Defendants failed to fully compensate Nastos employees for all hours worked, including time and a half for overtime, made unauthorized deductions from Nastos employees' paychecks, and took retaliatory actions against certain Nastos employees for their participation in this Action. The Complaint alleges that Defendants violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and District of Columbia law, including the D.C. Minimum Wage Act, as amended, D.C.

Code Ann. § 32-1001 et seq. ("DCMWA"), the D.C. Payment and Collection of Wages Law, as amended, D.C. Code Ann. § 32-1301 et seq. ("DCPCWL"), and District of Columbia common law.

C.     On June 7, 2012, the Parties executed the Terms of Settlement, which was fully binding on the parties and Class Members if no other written agreement superseded it.

D.     In agreeing to this Settlement, Plaintiffs do not concede that any infirmities exist in their claims, or that there is any merit to Defendants' defenses. Defendants deny that Plaintiffs' claims have any merit, or that Defendants have in any way violated the Fair Labor Standards Act, any law of the District of Columbia, the common law of any jurisdiction, or any other federal, state or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity. This settlement is not an admission of lack of merit, or liability on the part of any party.

NOW THEREFORE, it is hereby AGREED, by and among the Parties to this Settlement Agreement, through their respective attorneys, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, as follows:

I.     **DEFINITIONS**

As used in this Stipulation, terms defined in the Recital clauses shall have the meanings defined therein and the following terms shall have the following meanings:

1.     "Action" means *Jose Alberto Claros et al. v. Nastos Construction, Inc. et al.*, Case No. 1:09-cv-01888 (D.D.C. filed Oct. 2, 2009).

2.     "Class Period" means the period between October 2, 2006 and the date of preliminary approval of this Settlement.

3.     "Defendants" means Defendants Nastos Construction, Inc. Manuel Santos, Ray Amirian, Amporn Galloway, and Jose "Francisco" Rivera.

4.     "Defendants' Counsel" means the Greene Law Firm PLLC.

5.     "Effective Date of Settlement" or "Effective Date" means 91 days after Defendants tender the initial payment of $550,000.00 into escrow.

6.     "Individual Settlement Award" means the amount of money an individual may be entitled to receive under the terms of this Settlement Agreement.

7.     "Joint Motion for Preliminary Approval" means "Joint Motion for Preliminary Approval of the Proposed Class Action Settlement, Approval of the Notice Plan, and Appointment of Class Counsel."

8.     "Lead Plaintiffs" means Jose Alberto Claros, Nelson Martinez, Oscar Rodriguez, Milton David Alfaro, Jose Francisco Canizalez, Jose Arturo Ruiz, Luis Martin Vaires, Walter Gomez, Jorge Velazquez, Nelson Diaz Alas, Mauricio Diaz Alas, and Jesus Medina Mejia.

9.     "Nastos" means Nastos Construction, Inc.

10.    "Notice" means the Notice of Proposed Settlement of Class Action Lawsuit and Settlement Hearing, which is to be sent to members of the Class substantially in the form attached hereto as Exhibit A.

11.    "Order and Final Judgment" means the proposed order to be entered approving the Settlement substantially in the form attached hereto as Exhibit C.

12.    "Parties" means the Plaintiffs and Defendants in the above-named Action.

13. "Plaintiffs' Counsel" means all attorneys representing Plaintiffs listed at the end of this Stipulation.

14. "Preliminary Approval Order" means the proposed order preliminarily approving the Settlement and directing notice thereof to the Settlement Class, substantially in the form attached hereto as Exhibit B.

15. "Preliminary Approval Date" means the date upon which the Court enters the Preliminary Approval Order.

16. "Released Parties" means the Defendants, their representatives, agents, employees, officers, executives, directors, benefits plan administrators and fiduciaries, insurers, reinsurers, subsidiaries, affiliates, predecessors, successors, spouses, heirs, family members, counsel, and assigns of each, or any person or entity acting on behalf of or at the direction of any of them.

17. "Released Claims" refers collectively to "Released Class Claims," "Released Lead Plaintiff Claims," and the "Released Other Individual Claims."

18. "Released Class Claims" means any and all FLSA and/or District of Columbia wage-related claims that have been or could have been asserted by any class member from any time through the date the Settlement is given final approval by the Court, excluding any claim for enforcement of the Settlement Agreement.

19. "Released Lead Plaintiff Claims" means any and all claims that have been or could have been asserted by the Lead Plaintiffs from any time through the date the Settlement is given final approval by the Court, excluding any claim for enforcement of the Settlement Agreement.

20.     "Released Other Individual Claims" means any and all FLSA and/or District of
Columbia wage-related claims that have been or could have been asserted by any individual
settling individual claims as part of this Settlement Agreement from any time through the date
the Settlement is given final approval by the Court, excluding any claim for enforcement of the
Settlement Agreement.

21.     "Settlement" means the settlement contemplated by this Stipulation.

22.     "Settlement Class" and "Settlement Class members." For the purposes of this
Settlement and judicial approval of this Settlement Agreement, the Parties stipulate to the
certification of the following Settlement Class: "All persons who were employed by Nastos
Construction, Inc. to perform labor, skilled or unskilled, at any time between October 2, 2006
and the date of preliminary approval of the settlement set forth herein, in a position other than
project manager or fleet manager, or office/administrative staff." Also excluded from this
definition are any putative Settlement Class members who exclude themselves by "opting-out"
of the Settlement in accordance with the requirements set forth in the Notice. Jyselly Ortiz and
Gabriel Santos shall receive amounts in settlement of their unlawful deduction claims but are not
Settlement Class members.

22.     "Settlement Administrator" means FTI Consulting, Inc.

## II.     REPRESENTATIONS AND WARRANTIES

The Parties represent and warrant as follows, and each acknowledges that the other is
relying on these representations and warranties in entering into the Settlement Agreement:

1.     The Parties are voluntarily entering into this Settlement Agreement as a result of
arms-length negotiations among their counsel.

2.     The Parties have exchanged information relating to the claims and defenses asserted in the Action and understand the strengths and weaknesses of their respective positions.

3.     In executing this Settlement Agreement, the Parties are relying solely on their own judgment, belief and knowledge, and the advice and recommendations of their independently selected counsel, concerning all matters which relate in any way to the subject matter hereof.

## III.    APPROVAL OF SETTLEMENT

1.     The Parties shall take steps to obtain judicial approval of this Settlement Agreement and to implement it as approved.  In the event that the Court or any appellate court finds that the terms of the Settlement are inadequate, the Parties will negotiate in good faith to reach new settlement terms that can receive court approval; provided however that if the Court (or any appellate court) denies approval of the Settlement based on what it deems to be an inadequate settlement amount, Defendants may participate in negotiations to reach a new settlement amount but are under no obligation to do so.  Either party may terminate these settlement negotiations by written notice to the other party.  If the Parties fail to reach agreement upon new settlement terms that can obtain court approval, the terms of this Settlement Agreement will be void, and Defendants will be entitled to the return of any payments already made into escrow and all financial documents provided to Plaintiffs as part of the settlement process.

## IV.    SCOPE AND EFFECT OF SETTLEMENT

1.     The obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition of the Action and any and all Released Claims as against all Released Parties or their attorneys, whether previous or current.

V.    AMOUNT AND TIMING OF SETTLEMENT PAYMENTS:

    1.     Defendants will pay a total of $650,000 ("the Settlement Fund") in settlement of the Released Claims, other employment-related claims and unauthorized deductions, and attorneys' fees and expenses. The Settlement Fund will be an Qualified Settlement Fund within the meaning of Treasury Regulation §1.468B-1.

    2.     Defendants will place $550,000 of the Settlement Fund, minus the amount to be withheld by Nastos for employment tax purposes covering both the employer and the employee share, into escrow upon preliminary court approval of this Settlement. Defendants will provide Plaintiffs' Counsel with a schedule identifying amounts withheld in respect of each class member. The escrow agent shall be The Huntington National Bank, and the sole signatory on the account will be Norman Harrison of FTI Consulting, Inc., or his designee.

    3.     Defendants will place the remaining $100,000 into escrow 180 days after preliminary approval of this Settlement.

    4.     In the event that Defendants fail to make the payments described herein within five (5) business days after notice to Defendants' Counsel of default, or if any of the payments, or any portion of any payment, are avoided under Chapter 5 of the Bankruptcy Code or otherwise avoided under state law and are required to be disgorged or turned over and are actually disgorged or turned over, Plaintiffs' claims in the Action will be liquidated in the amount of $1,500,000, less any prior payments made by Defendants into the Settlement Fund that have not been avoided or turned over.

VI.    INDIVIDUAL SETTLEMENT AWARDS AND SETTLEMENT
      ADMINISTRATION

    1.     Plaintiffs' Counsel is responsible for the distribution of the Individual Settlement Awards, including the administration, determination, calculation, processing and payment of

claims. Plaintiffs' Counsel will supervise distribution of the Settlement Fund to the class without any requirement of review or approval by Defendants other than as set forth in this Agreement.

2.      Plaintiffs' Counsel has the sole discretion, subject to court approval and the terms of this Agreement including Defendants' right to contest distributions that violate this Agreement, to implement the payment of the Settlement Fund in accordance with the provisions of this Section VI. Other than making the payments described in Section V, providing the records described in Section VI.5.e, making the reports described in Section VI.8, agreeing to the provisions of this Section VI, and providing notice as described in Section XII.15, Defendants have no responsibility for, interest in, or liability whatsoever for the allocation of the proceeds of this Settlement and shall take no position on the allocation of the Settlement Fund. However, Defendants retain the right to object to any proposed allocation to the extent it violates the terms of this Agreement.

3.      Plaintiffs' Counsel, or their agents, shall determine each Settlement Class member's Individual Settlement Award based upon Nastos's business records (*e.g.,* the payroll records, wage entries, time entry reports). Class members will receive awards based on their employment by Nastos from October 2, 2006 to the date of Preliminary Approval. Class members will receive damages without regard to whether a class member is currently employed by Nastos or whether a class member opted into the suit during the opt-in period (September 30, 2011 to January 3, 2012). Class members who were not employed by Nastos until after October 2, 2009 shall receive $100 each, and no more than $5,000 collectively, in each case calculated prior to deduction of employment taxes. In the event that there are more than 50 class members who were not employed by Nastos until after October 2, 2009, each such class member shall receive a pro rata share of this $5,000.

4.     The $650,000 will be distributed as follows:

| | |
|---|---|
| Total pre-tax amount in respect of unpaid wages claims by all class members | $321,146.80 |
| Liquidated penalty to all class members | $127,498.72 |
| Additional compensation to specific class members | $45,000.00 |
| Amount in respect of unlawful deductions claims | $6,354.48 |
| Attorneys fees and costs | $150,000.00 |

5.     Payment of the Settlement Fund will extinguish and satisfy in full the Released

Claims. All tax withholdings referenced below will be made from the Settlement Fund and shall

cover both the employer and employee portion of any tax withholding. The methodology to be

used in making payments to Settlement Class members is as set forth below.

     a.     Each Settlement Class member will receive payment in an amount equal to

wages for approximately 1.4 hours for each week that a particular Settlement

Class member worked for Nastos between October 2, 2006 to October 2,

2009, based on their claims for uncompensated shop time, travel time,

Saturday, and other off-clock time, and hours worked in excess of 40 hours in

a particular week that were not compensated at time-and-a-half. The 1.4

hours per week shall be paid at the same pay rate that each Settlement Class

member would have received during that particular week. To the extent that

these additional 1.4 hours per week would have resulted in a Settlement Class

member exceeding 40 hours in a given week, the additional 1.4 hours per

week shall be paid at time-and-a-half for the additional time to the extent that

it exceeds 40 hours in that given week. In each case, amounts paid to a

settlement class member shall be reduced by the amount of withheld taxes.  In the event the total recovery of superintendents amounts to more than 8% of the portion of this Settlement allocated to class members' unpaid wage or overtime claims, then the recovery for those superintendents shall be limited to a collective pre-tax total of $10,000.

b.     Settlement Class members who were employed by Nastos between the period of October 2, 2006 to October 2, 2009 also shall receive an additional 40% of the amount they are entitled to receive under Paragraph 5(a) of this Section VI in satisfaction of any and all claims for liquidated damages.

c.     Class members who were not employed by Nastos until after October 2, 2009 will receive pre-tax amounts of $100 each, but no more than a total pre-tax amount of $5,000 collectively, in settlement of any claims against Nastos.  In the event that there are more than 50 class members who were not employed by Nastos until after October 2, 2009, each such class member shall receive a pro rata share of this $5,000.  The Parties agree that this amount is reasonable in light of Defendants' changes in their employment practices as of January 2010.

d.     An additional pre-tax amount of $5,000 each will be allocated to the Individual Settlement Awards for the following former employees in resolution of their employment based claims:  Jose Alberto Claros; Nelson Martinez; Oscar Rodriguez; Jose Arturo Ruiz; Walter Gomez; Jorge Velazquez; Nelson Diaz Alas; Mauricio Diaz Alas; and Jesus Medina Mejia.

e.     An additional amount will be allocated to the Individual Settlement Awards of the following individuals in the amount indicated in settlement of those individuals' claims for unlawful deductions:  Milton Alfaro ($287.73); Marco Bertolo ($423.64); Jose Alberto Claros ($288.09); Jose E. Diaz-Argueta ($382.48); Alexander Escobar ($17.50); Roberto Antonio Gonzalez ($420.26); Franklin Mauricio Guevara ($80.31); Bladimir Guzman-Rivera ($145.30); Nelson Martinez ($673.32); Oscar Rodriguez ($662.58); Oscar Ruiz ($285.42); Manuel De Jesus Amaya Sanchez ($268.18); Francisco Tembra ($128.58); Jorge Velasquez ($326.29); Santiago Arqueta Marquez ($653.91); Dennis Patrick Hood ($823.47); Jysselly Ortiz ($181.59); Gabriel Santos ($305.83).  In each case, amounts paid to a settlement class member shall be reduced by the amount of withheld taxes.

f.     The portion of each settlement award set forth in Sections 5(a), (c), (d), and (e) will be treated as back wages subject to W-2 reporting, and amounts in respect of federal and state payroll taxes and other required withholdings will be deducted and withheld and remitted to the federal, state or local government, as appropriate.  Plaintiffs will provide Nastos with the gross payment amount to be made to each individual so Nastos can calculate the necessary withholdings based on the last completed W-4 each employee tendered or any updated W-4 in conjunction with this settlement.  Nastos will then provide its withholding calculations to Plaintiffs' Counsel.

g.     The portion of each settlement award set forth in Section 5(b) shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form

1099 and shall not be subject to income tax withholding or FICA and FUTA withholding taxes. The Settlement Administrator shall be solely responsible for any and all such reporting by IRS Form 1099 and must contemporaneously provide Nastos with a copy of all Form 1099s completed as part of these payments.

6.      To the extent a Settlement Class member does not claim and collect their Settlement Award check within a period of ninety (90) days from the check's issuance or to the extent that no address can be identified for a Settlement Class member, the Settlement Award for that class member will revert back to the remaining Settlement Class members and shall be distributed to Settlement Class members pro rata based on the number of hours that each Settlement Class member worked between October 2, 2006 and October 2, 2009.

7.      Plaintiffs may make more than one disbursement to members of the class. Under no circumstances will any portion of the Settlement Fund revert back to the Defendants.

8.      Nastos shall be responsible for taking withholdings identified in Section 5(f) from the Settlement Fund. Nastos also shall be responsible for reporting these withholdings.

9.      Settlement Class members are solely responsible for any and all additional federal, state and local taxes that they may owe by virtue of the receipt of any portion of a Settlement Award under this Settlement that have not been withheld and paid pursuant to paragraph 5 of this Section.

10.     The plan of allocation of the Settlement Fund as set forth in this Section VI is a matter separate and apart from the Settlement between Plaintiffs and Defendants, and any decision by the Court concerning the plan of allocation shall not affect the validity or finality of the Settlement unless it violates or varies the terms of this Agreement. The Parties may not

cancel or terminate the Settlement based on the Court's or any appellate court's ruling with respect to the allocation. Defendant shall have no responsibility or liability for reviewing or challenging claims, the allocation of the Settlement Fund, or the distribution of the Settlement Fund. However, Defendants may object to any allocation that violates the terms of this Agreement, and may seek appropriate redress from the Court if the allocation is varied in a manner inconsistent with these terms.

11.     Plaintiffs' Counsel shall be responsible for the mailing of Notice to the Class pursuant to the following schedule:

a.     Upon request from Plaintiffs' Counsel and after the Preliminary Approval Hearing, Defendants will provide within five (5) business days the last known addresses of the persons who are or were putative Class Members, and for whom no address was previously provided. Copies of any additional wage records requested thereafter will be provided within five (5) business days.

b.     No later than fifteen (15) calendar days after the date of issuance of the Preliminary Approval Order ("Preliminary Approval Date"), Plaintiffs' Counsel will mail to all Settlement Class members at their last known address the form of Notice approved by the Court.

c.     If the United States Postal Service returns any Notice forms with or without a forwarding address, Plaintiffs' Counsel will (i) promptly re-mail the forms to the forwarding address, if a forwarding address is available; or (ii) make a good faith effort to locate the Settlement Class member's current address and re-mail the forms to that address.

12.     Costs associated with notice to the Class and claims administration will be paid from the Settlement Fund.

13.     The proffer of Settlement Awards pursuant to this Stipulation is deemed final and conclusive for all Settlement Class members. Settlement Class members who do not opt out of the Settlement are bound by all of the terms of this Settlement Agreement, including the terms of the Judgment to be entered in the Action and the releases provided for herein.

14.     All proceedings with respect to the administration, processing and determination of claims described in this Settlement Agreement and the determination of all controversies relating thereto shall be subject to the jurisdiction of the Court.

## VII.   RELEASES

Upon the Effective Date of the Settlement, the Lead Plaintiffs will release the Released Parties from all Released Lead Plaintiffs Claims and Released Claims. This is a general release.

Upon Effective Date of the Settlement, all Settlement Class members other than the Lead Plaintiffs who have not timely opted out will release the Released Parties from all Released Other Individual Claims and Released Class Claims.

## VIII.  ATTORNEYS' FEES AND EXPENSES

Plaintiffs' Counsel will be paid the total amount of $150,000 from the Settlement Fund for attorneys' fees and costs, and waives all claims to any additional compensation from the Defendants.

## IX.    TERMS OF PRELIMINARY APPROVAL ORDER

The Parties will jointly request that the Court enter a Preliminary Approval Order, in all material respects substantially in the form attached hereto as Exhibit B.

## X.   TERMS OF ORDER AND FINAL JUDGMENT

If the Settlement contemplated by this Settlement Agreement is approved by the Court,

Counsel will request that the Court enter an Order and Final Judgment substantially in the form

attached hereto as Exhibit C.

## XI.   EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

1.      The Parties are already bound to the terms of this settlement pursuant to the June

7, 2012 Terms Of Settlement.

2.      As of the date on which all counsel for the Parties execute this Settlement

Agreement, this Settlement Agreement will supersede the Terms of Settlement and be binding in

all respects, unless the Court fails to approve this Settlement Agreement and the Settlement

Agreement and Terms of Settlement will be automatically vacated.

3.      The "Final Settlement Date" will be the date when all of the following have

occurred:

      a.      entry of the Preliminary Approval Order, in all material respects substantially

          in the form attached hereto as Exhibit B;

      b.      approval by the Court of the Settlement, following notice to the Class and a

          hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

      c.      entry by the Court of an Order and Final Judgment dismissing the Action with

          prejudice, with continuing jurisdiction limited to enforcing this Settlement

          Agreement, in all material respects substantially in the form attached hereto as

          Exhibit C annexed hereto, and the time for appeal has either run without an

          appeal being filed or any appeal (including any requests for rehearing *en banc*,

petitions for certiorari or appellate review) has been finally resolved that this the settlement is fully enforceable.

3.      In the event any conditions under the Settlement Agreement are not satisfied, the Settlement does not receive final approval, the terms of the Settlement Agreement are reversed or modified, or the Settlement is cancelled, terminated or fails to become effective for any other reason, then the Parties to this Settlement Agreement will automatically revert to their respective positions existing immediately prior to the execution of this Stipulation and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Stipulation had not been executed and any related orders had not been entered. Defendants will have 30 days from the date the Settlement is voided or otherwise terminated to respond to Plaintiffs' outstanding discovery requests. Within five (5) business days of the voiding or cancelling of the Settlement, Plaintiffs will: (1) return all financial documents, provided to them as part of the settlement process, any copies thereof (whether electronic or paper), and any notes related to those documents or the information contained therein, (2) certify that all financial documents, any copies thereof or notes related thereto documents have been turned over to Defendants' Counsel; and (3) not use the information contained in those documents or notes unless and until the Court overrules Defendants objection to the provision of this information on a non-privileged basis.

## XII.   MISCELLANEOUS PROVISIONS

1.      All of the exhibits attached hereto and the Recitals set forth in A to D above are hereby incorporated by reference as though fully set forth herein.

2.      This Settlement Agreement may not be modified or amended, and none of its provisions may be waived, except by a writing signed by all Parties hereto.

3. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

4. The administration and consummation of the Settlement as embodied in this Settlement Agreement shall be under the authority of the Court, and the Court retains jurisdiction for the purpose of enforcing and administering this Settlement Agreement.

5. One Party's waiver of any other Party's breach of this Settlement Agreement will not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

6. This Settlement Agreement and its recitals and exhibits constitute the entire agreement among the Parties hereto concerning the Settlement of the Action; and no representations, warranties, or inducements have been made by any Party hereto concerning this Stipulation and its exhibits other than those contained and memorialized in such documents.

7. This Settlement Agreement may be executed in one or more counterparts. All executed counterparts will be deemed to be one and the same instrument provided that counsel for the Parties to this Settlement Agreement will exchange among themselves original signed counterparts.

8. This Settlement Agreement is binding upon, and inures to the benefit of, the Parties and their successors and assigns.

9. The construction, interpretation, operation, effect, and validity of this Settlement Agreement, and all documents necessary to effectuate it, is governed by the internal laws of the District of Columbia without regard to conflicts of laws, except to the extent that federal law requires that federal law governs.

10. This Settlement Agreement will not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by

counsel for one of the Parties, it being recognized that it is the result of arms'-length negotiations between the Parties, and all Parties have contributed substantially and materially to the preparation of this Settlement Agreement.

11. Whenever possible, each provision and term of this Settlement Agreement will be interpreted in such a manner so as to be valid and enforceable.

12. All counsel and any other person executing this Settlement Agreement and any of the exhibits hereto, or any related settlement documents, warrant and represent that they have the full authority to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

13. The Parties will accept all non-material or procedural changes to this Settlement Agreement if required by the Court in connection with Final Approval of the Settlement, but are not obligated to accept any changes in the monetary amount of relief provided for herein, or any other substantive change.

14. Other than filing the Settlement Agreement with the Court, submitting briefing in support of approval of the settlement and providing the agreed Notice in the form of Exhibit C to Class members as approved by the Court, Plaintiffs' Counsel may only disclose the terms of this Agreement in any firm business meetings or reports; and may also distribute a joint and mutually agreed press release with Defendants regarding the settlement: (1) on their websites; (2) in published materials used for law firm outreach; (3) in or as part of foundation proposals and reports for fundraising; (4) in legal profession media venues; and (5) to the Washington Post. Any public statements made about the case or the settlement that they will not disparage other parties or their counsel.

15.     As required by 28 U.S.C. § 1715, Defendants shall provide notice of the proposed settlement and the information required by 28 U.S.C. § 1715(b) to the appropriate state and federal officials within ten days of the date that the proposed settlement is filed with the Court.

Jose Alberto Claros        1-3-2013
Jose Alberto Claros        Date

Nelson Martinez        1-3-2013
Nelson Martinez        Date

Oscar Rodriguez   Jose Arturo Ruiz        1-4-13
Oscar Rodriguez   Jose Arturo Ruiz        Date

Oscar E Rodriguez        1-3-15
Jose Arturo Ruiz  Oscar Rodriguez        Date

Milton David Alfaro        1-3-13
Milton David Alfaro        Date

Jose Francisco Canizalez        Date

Luis Martin Vaires        1-3-13
Luis Martin Vaires        Date

Walter Gomez        1/4/13
Walter Gomez        Date

Jorge Valezquez        Date

Nelson Diaz Alas        1-3-2013
Nelson Diaz Alas        Date

Mauricio Diaz Alas        1-3-2013
Mauricio Diaz Alas        Date

Jesus Medina Mejia        1/3/2013
Jesus Medina Mejia        Date

Jose Alberto Claros                                          Date

Nelson Martinez                                             Date

Oscar Rodriguez                                            Date

Jose Arturo Ruiz                                            Date

Milton David Alfaro                                         Date

Jose Francisco Canizalez                                    Date

Luis Martin Vaires                                         Date

Walter Gomez                                               Date

*[signature]*                                              01/9./13

Jorge Valezquez                                            Date

Nelson Diaz Alas                                           Date

Mauricio Diaz Alas                                         Date

Jesus Medina Mejia                                         Date

Manuel Santos                                                          Date

Ray Amirian                                                            Date

Amporn Galloway                                                        Date

Jose "Francisco" Rivera                                                Date

_____ on behalf of Nastos Construction, Inc.                   Date

_/s/ Nancy D. Greene_
Nancy DiMauro-Greene
Greene Law Firm PLLC
3977 Chain Bridge Road, Suite 1
Fairfax, VA 22030
Telephone: (703) 539-0333
Fax: (703) 935-4194

*Counsel for Defendants*

_/s/ Laura E. Varela-Addeo_
Laura E. Varela-Addeo
The Law Offices of Gary M. Gilbert &
Associates, P.C.
1100 Wayne Avenue, Suite 900
Silver Spring, MD 20910
Telephone: (301) 608-0880

_/s/ John A. Freedman_
John A. Freedman
Andrew T. Karron
ARNOLD & PORTER LLP
555 Twelfth St., NW
Washington, DC 20004
Telephone: (202) 942-5316

_/s/ Geoffrey Gettinger_
David F. Williams
Geoffrey Gettinger
CADWALADER, WICKERSHAM & TAFT
LLP
700 Sixth Street, N.W.
Washington, DC 20001
Telephone: (202) 862-2200

_/s/ Matthew Handley_
Matthew Handley
Washington Lawyers' Committee for Civil
Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, DC 20036
Telephone: (202) 319-1000

*Counsel for Plaintiffs*

Date: February 14, 2013